```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
BARBARA SICHERMAN              :      CIVIL ACTION
                               :
          v.                   :
                               :
NATIONWIDE LIFE INSURANCE      :
COMPANY, et al.                :      NO. 11-7227
```

MEMORANDUM

McLaughlin, J.                                      April 3, 2012

The plaintiff filed this action on November 18, 2011, alleging that the defendants deceived her and her late husband in connection with a life insurance policy the plaintiff's husband had with Nationwide Life Insurance Company ("Nationwide"). The complaint alleges that the defendants tricked Mr. Sicherman into allowing his life insurance policy to lapse, then failed to pay the benefits when Mrs. Sicherman attempted to collect on the policy after her husband died in December 2010. The plaintiff brings claims for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I); Bad Faith under 42 Pa. Cons. Stat. § 8371 (Count II); and Breach of Contract (Count III). The defendants have moved to dismiss the complaint in its entirety. The Court will grant the defendants' motion.

I.   Facts

The following facts are taken as true from the complaint. The plaintiff was the beneficiary, and her husband the insured, on Nationwide Life Insurance Policy No. LO34143890

(the "policy"), with a face value of $400,000.  The Sichermans also had homeowner and automobile insurance with Nationwide.  The policy contained a "grace period" permitting the policy to remain in force if any late payment was received within thirty-one days of the due date.[1]  Compl. ¶¶ 10-14.

On June 13, 2010, and July 13, 2010, Mr. Sicherman was sent letters by Nationwide informing him that his life insurance premium would be increasing to $346.02 per month.  Id. Ex. F.  A bill prepared on July 2, 2010, however, listed Mr. Sicherman's life insurance premium as $311.62.  Id. Ex. E.  Mr. Sicherman paid this amount along with the premiums charged for his auto and homeowner's policies as listed in the July 2, 2010 bill.  Id. ¶ 16.

On July 21, 2010, Nationwide sent a letter to Mr. Sicherman stating the following:

> Please accept our apology, as we recently made an error with your last billing for the life policy referenced above.  The bill you received, and paid, did not include the annual increase due to attained age as stipulated in your contract.
>
> The life premium that was paid could not be applied because we cannot apply partial premiums.  We will need

---

[1] The plaintiff also alleges that an "Easy Reinstatement Period" applied to late premium payments pursuant to the Nationwide "Policy Owners Manual," permitting reinstatement of the policy through payment of "all overdue premiums."  Policy Owners Manual at 10, Compl. Ex. D.  As the defendant has noted, the manual also states that it is "not a contract or part of your contract.  Only the policy itself is your contract with Nationwide."  Id. at 2.

-2-

>  a balance of $34.40 to complete the 08/07/2010 payment. The additional payment is needed within the next 20 days in order to avoid a "past due status." A business reply envelope is enclosed for your convenience.
>
>  Thank you for allowing us to be of service to you. If you have any questions, please contact your Sales Representative or our Customer Service Department at 800-547-7548.[2]

Id. Ex. G.

The next bill Nationwide prepared, on August 3, 2010, lists a life insurance premium charge of $346.02, and Nationwide acknowledges in a bill dated September 3, 2010 that a payment of that amount, along with the auto and homeowner premium payments, was received on August 23. The September 3, 2010 bill states as part of Nationwide's "Billing Terms and Conditions" that "[p]ayments are applied to prior policy period balances and fees first, then to the current policy period balance in the following order: Auto, Property, Commercial and Life." Id. Exs. H, I.

Nationwide issued a check, dated August 19, 2010, to Mr. Sicherman in the amount of $311.62. The face of the check states the following: "LIFE MISCELLANEOUS DISBURSEMENT BALANCE DUE NOT RECEIVED. PLEASE CONTACT 1-800-543-3747 IF YOU HAVE ANY

---

[2] Mr. Sicherman had received similar letters regarding his life insurance premium in July 2006, 2007, and 2009, each noting that a billing error had been made and requesting that the difference between the premium due and the premium as billed be paid within twenty days. Each letter noted that partial premium payments could not be applied, and that failure to pay the balance within twenty days could result in the account being placed in past due status. Compl. Ex. U.

QUESTIONS." Id. Ex. J.

Mr. Sicherman became ill around Labor Day 2010. Id. ¶ 24. On September 28, 2010, Mr. Sicherman contacted his Nationwide agent, Michael Robinson, requesting cancellation of his auto and homeowner policies, as he had obtained replacement policies from another carrier. When Robinson did not respond, Sicherman sent a follow-up email on October 7, 2010. Robinson did not respond to that correspondence either, but Sicherman was issued refund checks for the two canceled policies on October 14, 2010. Id. ¶¶ 27-32 & Exs. M, N. Mr. Sicherman's illness was ultimately diagnosed as cancer, and variety of chemotherapy, radiation, and surgical interventions were unavailing. He died on December 25, 2010. Id. ¶ 24.

The plaintiff alleges that it is Nationwide's policy not to contact insureds whose life insurance policies are in danger of lapsing, and that this policy was why Robinson did not contact Sicherman in the fall of 2010. Further, the plaintiff alleges that Nationwide's engages in a variety of practices designed to confuse insureds and beneficiaries in order "to avoid life insurance claims." These practices include the billing-error letters referred to in Exhibit U; cancellation of policies without notice; and failing to advise that nonpayment of amounts due as a result of billing errors may result in policy cancellation, among other practices. Id. ¶¶ 32-34, 46.

On November 7, 2010, Nationwide sent a letter to Mr. Sicherman, stating that "[y]our policy has lapsed.  If you want to reinstate this coverage, please hurry. . . . If you act now and are still insurable, you may have this policy reinstated." Id. Ex. Q.  Neither the plaintiff nor Mr. Sicherman received Nationwide's November 7, 2010 letter regarding the life insurance policy's lapse prior to Mr. Sicherman's death in December.  When Mrs. Sicherman requested payment of benefits under the policy, her request was denied by Nationwide in a letter dated January 21, 2011; the letter stated: "This policy is no longer active. Policy lapsed on September 7, 2010."  Id. ¶ 38; Ex. T.

Mrs. Sicherman retained counsel, who sent a letter to Nationwide dated June 16, 2011, advising Nationwide of the plaintiff's claims and demanding that Nationwide's "denial of [her] claim . . . be reversed."  On September 15, 2011, Nationwide paid the plaintiff, through her counsel, $408,991.27. This amount represented "the face amount of $400,000; minus premium charge to place the policy back into active status $1,384.08; interest payable on the proceeds $10,375.35."  Id. Exs. V, W.

II.  Discussion

The complaint claims that Nationwide's practices in connection with its initial failure to pay benefits under the policy constitutes an unfair trade practice, bad faith, and a

breach of the policy contract.  The defendant moves to dismiss all claims because it had a reasonable basis for denying her claim initially, any UTPCPL claim is not actionable under the economic loss doctrine and recovery must be made in contract, and that because the claim was paid with interest, she has failed to allege resultant damages from any contract breach.  The Court agrees and will dismiss the complaint.

A.   UTPCPL Claim

The plaintiff argues that Nationwide's conduct is "deceptive and fraudulent" and in violation of the UTPCPL because the defendant's billing practices were designed to result in the lapse of the policy for failure to make premium payments, and prevent payment of benefits under the policy when beneficiaries sought to collect.  The plaintiff claims explicitly that these practices violate Sections 201-2(4)(ix) (involving deceptive advertising) and 201-2(4)(xxi) (the "catchall" provision prohibiting fraudulent or deceptive conduct "which creates a likelihood of confusion or misunderstanding."  The defendant argues that the plaintiff effectively seeks contract damages, and that the economic loss doctrine bars her from bringing an action under the UTPCPL under the circumstances.  The Court agrees.

The United States Court of Appeals for the Third Circuit has found that the economic loss doctrine bars tort actions Pennsylvania law to  bar recovery of economic losses that

are properly brought in a contact action except in limited circumstances.  See Werwinski v. Ford Motor Co., 286 F.3d 661, 670-81 (3d Cir. 2002) (reviewing the application of the doctrine to fraud and UTPCPL claims under Pennsylvania law).  In general, the doctrine prevents a plaintiff from "recovering in tort economic losses to which their entitlement flows only from a contract."  Id. at 671 (citing Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)).  The Werwinski court concluded that the doctrine operated to bar UTPCPL claims of intentional fraud, except in circumstances where the alleged fraud occurs outside of a contract.  Id. at 676-77 (in predicting Pennsylvania Supreme Court holding, adopting the reasoning of other state courts that held claims of fraud "interwoven with" contracts to be barred).

       This Court is bound by the Third Circuit's prediction of the Pennsylvania Supreme Court's holding, and must dismiss the plaintiff's UTPCPL claims because she seeks damages that ultimately flow from her husband's policy contract.  The plaintiff's argument that her claims are not interwoven with her claim for breach, Pl. Opp. 16, is unavailing.  Although she argues that Nationwide's procedures "are designed to induce insureds to purchase and maintain their life insurance policies and maintain confusion," the conduct alleged occurred during the performance of the contract, not extraneous to it.  This conduct

is clearly "interwoven with" the contract and the plaintiff is barred from recovering losses therefrom in tort.

The plaintiff claims that this case is like Smith v. John Hancock Insurance Company, in which the district court found claims brought under the UTPCPL to be actionable because despite the existence of a contract with the defendant, the plaintiff's UTPCPL damages were unrelated to any alleged breach of contract. No. 06-3876, 2008 WL 4072585, at *10-11 (E.D. Pa. Sept. 2, 2008). There, the plaintiff alleged that the defendant had fraudulently represented that the annuities it sold to the plaintiff as "bonus" annuities when in fact they contained no bonus, and that the misrepresentation induced her to purchase an annuity contract from the defendant. Id. at *9.

The Smith court applied Werwinski and held that the Third Circuit had not eliminated UTPCPL claims for economic loss under circumstances where "the claims at issue arise independently of the underlying contract." There, the plaintiff's UTPCPL claim was "a classic fraud-in-the-inducement claim where the fraud is not only extraneous to the contract but also unrelated to any breach of contract," and thus not barred by the economic loss doctrine. Id. at *9-*11. Here, the plaintiff has not alleged that her husband was induced to enter the contract through deceptive conduct or that the defendant's deceptive acts were related to anything other than performance of


the contract--specifically, billing practices.  The alleged deceptive practices here are critically related to the alleged breach.  Thus, the plaintiff's reliance on Smith is unavailing.

To the extent that the complaint can be construed as claiming that Nationwide's advertising slogan that "Nationwide is on your side" is deceptive under the statute, Compl. ¶ 54, this claim fails as a matter of law.  Even if such a representation was made extraneous to and for the purpose of inducing the plaintiff to enter the policy contract, private UTPCPL plaintiffs must allege that they have justifiably relied on an alleged deceptive practice to state a claim.  Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221-22 (3d Cir. 2008).  Even if the plaintiff could claim that her husband relied on this statement in entering the policy contract, such reliance would not be justifiable because this statement is puffery.  Cf. Gidley v. Allstate Ins. Co., No. 09-3701, 2009 WL 4893567 (E.D. Pa. Dec. 17, 2009) (finding that another insurer's slogan, "You're in good hands with Allstate," to be puffery and unable to be justifiably relied upon in a UTPCPL claim) (citing Alpine Bank v. Hubbell, 555 F.3d 1097, 1107 (10th Cir. 2009) ("[M]ass advertising expressed in vague terms . . . is not relied on by rational adults")).

B.  Bad Faith

The plaintiff argues next that Nationwide's practices constitute bad faith under 42 Pa. Cons. Stat. § 8371.  She argues

that Nationwide's overall pattern of billing practices and failure to inform Mr. Sicherman regarding the lapse and cancellation of his policy constitute bad faith.

To state a claim under that statute, the plaintiff must allege facts that show, by clear and convincing evidence: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky v. Prudential Property & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994), appeal denied, 659 A.2d 560 (Pa. 1995)).

The plaintiff argues that the ultimate payment of benefits in this case does not preclude liability under the bad faith statute. This is accurate. Indeed, an initial denial or delay in payment of benefits that are ultimately disbursed is not inconsistent with liability under the bad faith statute. W.V. Realty Inc. v. Northern Ins. Co. of New York, 334 F.3d 306 (3d Cir. 2003).[3] Similarly, the plaintiff's contention that an

---

[3] The plaintiff also argues that the defendant's behavior rises to bad faith by referencing cases that hold that violations of other statutes, such as the Unfair Insurances Practice Act ("UIPA") may be probative of bad faith. See Pl.'s Opp. 22-23 (citing Romano v. Nationwide Ins. Co., 646 A.2d 1228 (Pa. Super. Ct. 1994)). The Romano court acknowledged that referencing UIPA standards and Pennsylvania insurance law in general was not inappropriate on looking to Section 8371 liability. However, the plaintiff must still make out a claim within the "plain meaning" of the statue and allege conduct that "imports a dishonest purpose and means a breach of a known duty." Id. at 1232 (citing

insurer's investigative practices may also give rise to viable claims of bad faith is true as a matter Pennsylvania law. O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. Ct. 1999).

Although the bad faith statute encompasses more than the denial of claims, conduct outside claim denial but constituting bad faith has generally been restricted to willful delay, making repetitive or unnecessary requests for information, obstructing the process of litigation, or otherwise frivolous behavior.  See id. at 906-07 (describing the expansion of the Section 8371 cause of action beyond mere refusal to pay). Indeed, at its core, the bad faith statute still prohibits "frivolous or unfounded refusal to pay proceeds of a policy." Terletsky, 649 A.2d at 688.

The plaintiff alleges that the defendant misrepresented the terms of the policy and failed to conduct a reasonable investigation into the merits of the plaintiff's claim given all available information.  She fails to allege facts that demonstrate which terms of the policy were misrepresented or what information should have been considered by the defendant in making its determination on her claim.  Moreover, her allegation that the defendant "refused to effectuate a prompt and fair settlement of [her] claim" is belied by the evidence that upon

---

Black's Law Dictionary 139 (6th ed. 1990)).

the plaintiff's challenge to the defendant's initial rationale for claim denial, the defendant promptly paid the policy proceeds in full with interest.[4] The allegations of the complaint make clear that the defendant not only premised its initial denial of claims on a lapse in the payment of policy premiums, but ultimately paid the proceeds of the policy at issue in full when that denial was challenged. Such conduct does not constitute bad faith. The Court will therefore dismiss Count II.

    C.    <u>Breach of Contract</u>

The plaintiff alleges that under the policy, the defendant was under an obligation to make prompt payment of the proceeds of the policy upon the death of her husband. Compl. ¶ 67. She alleges that Nationwide's failure to do so constitutes a breach of that contract, and requests monetary relief "in an amount as may be allowed by law." A breach of contract claim must allege the existence of a contract, a breach of a duty imposed under the contract, and resultant damages. <u>Guerra v. Redevelopment Auth. of City of Phila.</u>, 27 A.3d 1284, 1289 (Pa.

---

[4] To the extent the plaintiff premises her bad faith claim on the defendant's billing practices and refusal to accept the partial premium payment in July, 2010, both the defendant's "please accept our apology" letter and the face of the policy stated that the defendant would be unable to accept a payment of less than the full policy amount. Compl. Ex. C at 4. The policy terms state that it "will lapse, without value, if premiums are not paid." <u>Id.</u> at 5. These allegations do not rise to the intentionally dilatory or obstructive behavior required to state a claim for bad faith.

Super. Ct. 2011).

        The plaintiff acknowledges that she received payment on September 15, 2011 of $408,991.27, of which $10,375.35 was deemed interest on the proceeds of the policy after unpaid premiums had been deducted. Although the complaint does not allege damages resulting from the defendant's breach of contract, the plaintiff's opposition to the instant motion argues that the defendant failed to pay the "statutorily required rate of 6% interest" under 41 Pa. Cons. Stat. 202. Pl.'s Opp. 29. However, this statute applies to unpaid contract benefits only where the contract does not specify a rate of interest. Here, the policy states that settlement payments will be paid with 2.5% interest per year.[5] Compl. Ex. C at 6. Thus, Section 202 does not apply and the plaintiff may not base her claim for damages resulting from any breach of contract on a failure to pay a rate of interest owed under the statute.

        The plaintiff also argues that "under [the] circumstances, counsel fees and costs may be appropriate," and so she has properly alleged the existence of damages. Id. However, recovery of attorney's fees is not available on a breach of contract claim unless a statute, agreement of the parties, or

---

[5] Assuming arguendo that the benefits became due on the day that Mr. Sicherman died, a payment on September 15, 2011 of $10,375.35 in interest on an amount owed of $398.615.92 represents a rate of interest of 3.47% per annum, which appears to exceed the amount due under the policy.

some other exception so provides.  <u>Knecht, Inc. v. United Pacific Ins. Co.</u>, 860 F.2d 74, 80 (3d Cir. 1988).  The policy does not appear to provide for attorney's fees, no statute provides for recovery of attorney's fees on a breach of contract claim, and no recognized exception to the rule in contract cases is present here.

In sum, the plaintiff has not alleged that she has suffered compensable damages resulting from any breach of the contract, and therefore Count III of the complaint will be dismissed.  The Court's dismissal of all claims will be without prejudice to the plaintiff's right to properly plead her claims in an amended pleading.

An appropriate order shall issue.